Neil A. Rombardo, Esq., Nev. Bar No. 6800
nrombardo@washoeschools.net
Sara K. Montalvo, Esq., Nev. Bar No. 11899
sara.montalvo@washoeschools.net
WASHOE COUNTY SCHOOL DISTRICT
P.O. Box 30425
Reno, NV 89520-3425
Telephone:  775-348-0300
Fax:  775-333-6010
Attorneys for Defendants

UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| JANE DOE as Guardian of J. DOE, a minor, and in her individual capacity,<br><br>Plaintiffs,<br><br>vs.<br><br>WASHOE COUNTY SCHOOL DISTRICT, a political subdivision of the State of Nevada, its BOARD OF TRUSTEES, and its SUPERINTENDENT, DR. SUSAN ENFIELD, DOES I-XX and ROE entities I-XX,<br><br>Defendants.<br>_____/ | CASE NO.: 3:23-cv-00111-ART-CLB<br><br>**MOTION TO DISMISS COMPLAINT WITH PREJUDICE**<br><br>[FRCP 12(b)(6);<br>28 U.S.C. §1367(c)(3)] |

Defendants, Washoe County School District, a political subdivision of the State of Nevada (District), its Board of Trustees (Board), and its Superintendent, Dr. Susan Enfield (collectively referred to as Defendants), through counsel, move to dismiss with prejudice Plaintiffs' Complaint (ECF No. 1) pursuant to Federal Rules of Civil Procedure (FRCP) 12(b)(6) and 28 U.S.C. §1367(c)(3). This Motion is made and based on the foregoing rules, the pleadings with attachments on file herein, the following memorandum of points and authorities, LR 7-2, and any matters that may come before the Court for its consideration relative to this Motion.

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

When one looks past the conclusory allegations and formulaic recitation of legal elements in the Complaint, the only facts pled are that the unidentified minor Plaintiff J. Doe was a 7th grade student who receives services under the Individuals with Disabilities Education Act (IDEA) at Dilworth STEM Academy (Dilworth), a middle school within the District, and who physically attacked a teacher. The teacher then defended himself from the attack, which was allegedly provoked by the teacher for allegedly using a racial slur and confronting J. Doe when he was tardy. Even taking these limited facts as true, they are not sufficient to impose liability on the named Defendants via any of the legal theories articulated in the Complaint.

In *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the United States Supreme Court clarified the standard required of a pleading under Rule 8: a complaint may not plead conclusory allegations with no specific facts supporting the claims. Rather, to survive a motion to dismiss, a plaintiff must allege specific facts that enable the court to draw the plausible and reasonable inference that a defendant is liable for the misconduct alleged. A complaint that does nothing more than present "a sheer possibility that a defendant acted unlawfully" is subject to dismissal. *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 556.

Here, Plaintiffs' Complaint falls far short of the *Twombly/Iqbal* standards. The causes of action asserted against Defendants are simply threadbare recitals of the elements of each cause of action and, in some instances, fail to allege the requisite elements at all. In fact, the causes of action are couched in conclusory terms and fail to provide sufficient factual allegations to support a cognizable claim under Rule 12(b)(6). Moreover, even the minimum facts raised in the Complaint still fail as a matter of law, because the facts plead no plausible cause of action for the District, Superintendent Enfield or the Board. Further, as to Plaintiffs' claim involving failure to

1    comply with the IDEA, not only do these claims again fail to plead any sufficient facts to create

2    a plausible cause of action, but such claims are barred for failure to exhaust administrative

3    remedies.  Accordingly, the Complaint should be dismissed, in its entirety, with prejudice.[1]

4    **II.    RELEVANT ALLEGATIONS**

5            The Complaint lists two plaintiffs: 1) Jane Doe as guardian of minor J. Doe, and 2) Jane

6    Doe in her individual capacity.[2]  (ECF No. 1, p. 1 caption, ¶ 8.)  The Complaint names the District,

7    its Board, and District Superintendent Enfield as Defendants. (ECF No. 1, ¶¶ 9-11.) The

8    Complaint does not allege whether the Board or Superintendent Enfield are sued in their

9    individual or official capacities, claims the Board is a "body corporate" of the District, and

10   appears to confuse Superintendent Enfield with the Nevada Department of Education

11   Superintendent by incorrectly alleging that Superintendent Enfield was appointed by the Nevada

12   Governor and is a State executive rather than a District executive. *Id.*

13           Beyond these allegations, Plaintiffs' Complaint is remarkably sparse in terms of specific

14   factual information for its 42 pages of length and its 10 causes of action. The "General

15   Allegations" consist of the following facts:

16   ///

17

18           [1] Additionally, the caption of the Complaint identifies the following fictitious defendants: DOES I-XX and
     ROE entities I-XX. (ECF No. 1, p. 1, caption.) However, no provision in the Federal Rules even permits the use of
19   fictitious defendants. *See McMillan v. Dep't of the Interior*, 907 F. Supp. 322, 328 (D. Nev. 1995) (citing *Fifty
     Associates v. Prudential Ins. Co.*, 446 F.2d 1187, 1191 (9th Cir. 1970)). Furthermore, nowhere does the Complaint
20   cite any conduct by a fictitious or unknown party. Therefore, the legal arguments asserted herein are equally
     applicable to these fictitious defendants, which should be dismissed as a matter of law.

21           [2] The caption is the only reference to Plaintiff parent Jane Doe alleging claims in her individual capacity;
     yet, the limited facts alleged do not support any theory that Jane Doe has any standing to sue in her individual
22   capacity. Accordingly, to the extent the Complaint is alleging that Jane Doe maintains her own individual claims, not
     only is this claim procedurally improper as she is an adult and has failed to properly identify herself as a plaintiff
23   (*see* Rules 10 and 17), but she wholly fails to establish that she has any standing to pursue claims against the District
     because, as a non-student or non-employee of the District, she has not suffered any personal harm. *See Lujan v. Defs.
     Of Wildlife*, 504 U.S. 555, 560–61 (1992) (requiring a plaintiff to have suffered an injury in fact connected to the
24   alleged conduct of the defendants) and *Morgan v. City of New York*, 166 F.Supp.2d 817, 819 (S.D.N.Y. 2001) (parent
     lacks standing to bring individual claims under § 1983 for deprivation of daughter's constitutional rights).

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

1    During the relevant time period of the Complaint, J. Doe attended 7th grade at Dilworth

2  where he receives special education services through an Individualized Education Program (IEP)

3  under the IDEA. (ECF No. 1, ¶¶ 39-40.) It is alleged that J. Doe suffers from anxiety and an

4  inability to control his emotions, which the Complaint claims, without any specifics, that the

5  District failed to properly program for in J. Doe's IEP and allegedly targeted him due to these

6  issues. (ECF No. 1, ¶¶ 41-44.) Allegedly, on September 21, 2022, J. Doe was tardy to class and

7  was approached by a teacher regarding his tardiness, which led to a verbal altercation between

8  the two individuals, with the teacher allegedly using a racial slur, and J. Doe physically attacking

9  the teacher. (ECF No. 1, ¶¶ 45-48.) After J. Doe physically attacked the teacher, the teacher

10  restrained J. Doe to prevent him from further attacks. (ECF No. 1, ¶ 49.) According to the

11  Complaint, again with no facts or allegations of any specific prior incidents with J. Doe, the

12  teacher targeted J. Doe because of his race and disability. (ECF No. 1, ¶ 50.) The Complaint also

13  alleges that the teacher has prior discipline for unprofessional behavior toward other students who

14  are not plaintiffs such as saying they were "ugly ducklings" or would not amount to anything.

15  (ECF No. 1, ¶ 55-59.)

16  **III.    STANDARD OF REVIEW**

17    Rule 12(b)(6) provides that a court must dismiss a complaint if it fails to state a claim

18  upon which relief can be granted. The sufficiency of a complaint on a Rule 12(b)(6) motion to

19  dismiss "presents the antecedent question of what a plaintiff must plead in order to state a

20  claim[.]" *See Twombly*, 550 U.S. at 554-55. The "plausibility" standard, which the Supreme Court

21  expounded in *Twombly* and reaffirmed in *Iqbal*, governs the pleading standard necessary to

22  survive a motion to dismiss.

23    "To survive a motion to dismiss, a complaint must contain sufficient factual material,

24  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

(quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

In turn, Rule 8(a)(2) "'requires a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting Rule 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although Rule 8 does not require "detailed factual allegations," it demands more than the unadorned "the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. It also demands more than "labels and conclusions," "formulaic recitation of the elements of a cause of action," "'naked assertion[s]' devoid of 'further factual enhancement,'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555, 557). The complaint must plead sufficient factual context to cross the line from a "possibility" or the "conceivable" to the "plausible." *See Twombly*, 550 U.S. at 557, 570. As the Court previously recognized, on a motion to dismiss "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). *See also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (stating that courts are not required to make "unreasonable inferences" or "unwarranted deductions of fact" to save a complaint from a motion to dismiss); *Anderson v. Clow*, 89 F.3d 1399, 1403 (9th Cir. 1996) (conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim).

*Iqbal* provides a two-step approach for a Rule 12(b)(6) motion: First, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," 129 S. Ct. at 1950. Then, a court

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

must consider the factual allegations—if any—to "determine whether they plausibly give rise to an entitlement of relief." *Id.* at 1950. In short, a plaintiff must plead some factual content to support the legal conclusions she ultimately seeks to establish. Where the well-pled facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—"that the pleader is entitled to relief,'" *Iqbal*, 129 S. Ct. at 1950, and the plaintiff's complaint must be dismissed. *See id.*

## IV.  LEGAL ARGUMENT

### A.  The Board is an Improperly Named Defendant Who Cannot Sue or Be Sued and, Therefore, The Claims Against It Must be Dismissed with Prejudice.

In the case of *Wayment v. Holmes*, 112 Nev. 232, 237-38, 912 P.2d 816, 819 (1996), the Nevada Supreme Court held that the Washoe County District Attorney's Office was not an entity that could be sued because it was merely a department of Washoe County and not an independent political subdivision. The *Wayment* Court specifically held that Nevada had not waived immunity on behalf of its *departments* of political subdivisions, as evidenced by the fact that "the Washoe County District Attorney's office has not been conferred the power to sue and be sued." *Wayment*, 112 Nev. at 238 (citing NRS 41.031). Accordingly, the *Wayment* Court instructed that "[i]n the absence of statutory authorization, a department of the municipal government may not, in the departmental name, sue or be sued." *Id.*; *see also Scheinder v. Elko Cnty. Sheriff's Dep't,* 17 F.Supp.2d 1162, 1164-65 (D.Nev.1998) (holding that although NRS 41.031 authorizes suit against "any political subdivision of the State" but that authorization does not extend to departments of a municipal government.).

As with the Washoe County District Attorney's Office, the State of Nevada has not waived sovereign immunity with respect to a board of trustees for a local school district, which is merely the "body corporate" of the school district. *See* NRS 41.031; *see also* NRS 386.110.

1    The Nevada Legislature has made clear that a county school district is a political subdivision of

2    the State of Nevada, with the power to sue and be sued. *See* NRS 386.010(2) and (3). However,

3    the Nevada Legislature did not make a board of trustees a political subdivision of the state, nor

4    did the Nevada Legislature confer upon a board of trustees the power to sue and be sued. *See* NRS

5    386.110 *et seq.* As such, the Board herein cannot be sued because Nevada has not waived its

6    sovereign immunity as to the body corporate of a local school district. *See* NRS 41.031; *see also*

7    NRS 386.110. Accordingly, all claims made against the Board fail as a matter of law and must be

8    dismissed with prejudice. *See Wayment*, 112 Nev. at 238; *see also Scheinder*, 17 F.Supp.2d at

9    1164-65.

10       **B.  Plaintiffs' Boilerplate Complaint – Comprised of Conclusory Allegations – Does
             Not Plead Sufficient Facts to Create a Plausible Claim Against the District or
11           Superintendent Enfield.**

12       The logic driving the Supreme Court's decision in *Twombly* is simple: Before the

13   defendant must undertake the expense and burden of defending the plaintiff's claims, the plaintiff

14   must provide the necessary factual predicates to his or her allegations.

15       "[T]he tenet that a court must accept as true all allegations contained in a complaint is

16   inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

17   supported by mere conclusory statements, do not suffice ... [W]e 'are not bound to accept as true

18   a legal conclusion couched as a factual allegation.'" *Iqbal.*, 129 S. Ct. at 1949-50. "A pleading

19   that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

20   will not do.'" *Id.* at 1949.

21       Even after generously construing the allegations, the Complaint fails the *Iqbal* test as to

22   all of the apparent theories of liability. The Complaint fails to set forth any facts or establish

23   exactly what the named Defendants did or did not do to give rise to any plausible cause of action.

24   Indeed, the only claim with any specific facts concerns an incident at a middle school where a

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

teacher, who is not a named defendant, allegedly disciplined J. Doe for being tardy, allegedly used a racial slur during the discipline, J. Doe attacked the teacher, and the teacher defended himself. Without any specific facts alleged as to the conduct of the named Defendants and how such conduct resulted in the constitutional deprivations or their intentional state tort claims, Plaintiffs have failed to establish any plausible claim of entitlement to relief which meets the strict pleading standards of *Twombly*, *Iqbal* or their progeny. The allegations are no more than bald assertions with no real facts and no specific assertion of a legal cause of action or legal right of action and are insufficient to render any claim plausible. The most basic factual underpinnings of discrimination and equal protection are not alleged; rather, the Complaint is wrought with threadbare recitals of the elements of the causes of action and conclusory factual inferences.

Moreover, even taking the minimal facts alleged as true, there is no plausible claim pled against the remaining named Defendants – the District and Superintendent Enfield. Accordingly, the entire Complaint should be dismissed with prejudice on the pleading standards alone because, as the Supreme Court recognized in *Twombly* and *Iqbal*, this sort of "an 'unadorned, the-defendant-unlawfully-harmed-me accusation,'" is not sufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Moreover, as the foregoing sections detail, even when Defendants attempt to guess as to what claims could possibly be asserted against the remaining two Defendants, such claims still fail as a matter of law and the Complaint must be dismissed with prejudice.

###### 1. The Complaint Fails to Allege Any *Monell* Liability to Maintain a Claim Against the District and Superintendent Enfield.

Following *Monell v. Department of Social Services*, 436 U.S. 658 (1978), "it is well-settled that in claims brought under 42 U.S.C. § 1983, municipalities are liable only for constitutional violations resulting from an official 'policy or custom.'" *Fed'n of African Am.*

8

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

*Contractors v. City of Oakland*, 96 F.3d 1204, 1216 (9th Cir. 1996) (quoting *Monell*, 436 U.S. at 694) ("*Monell* liability"). "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691. The same applies to government officials sued in their official capacity. *See Iqbal*, 556 U.S. at 676 ("based on the rules our precedents establish, respondent correctly concedes that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.") (citing *Monell*, 436 U.S. at 691 (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983). "Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability. As we recognized in *Monell* and have repeatedly reaffirmed, Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 415 (1997). Put differently, "a municipality sued under § 1983 is not subject to vicarious liability for the acts of its agents." *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001). Thus, a school district will not be liable under § 1983 unless the school district's official policies caused the deprivation of the protected rights. *Monell*, 436 U.S. 658, 690-94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (addressing how a governmental entity may be held liable for injuries caused by its employees and agents); *Lansberry v. Altoona Area Sch. Dist.*, 318 F. Supp. 3d 739, 758 (W.D. Pa. 2018) (explaining that for a school district to have liability under *Monell*, it "must establish that the [district] had a 'policy or custom' and that the policy or custom 'caused' the constitutional violations" (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003)).

"The 'first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

constitutional deprivation.'" *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016) (*en banc*) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989)). "[I]t is not enough for a § 1983 plaintiff to merely identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Brown*, 520 U.S. at 404. "A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233-34 (9th Cir. 1989); *see also City of Canton*, 489 U.S. at 391 ("[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.").

Here, the Complaint fails to identify any specific policy, custom or practice which allegedly led to a constitutional violation and therefore, liability cannot extend to the District or Superintendent Enfield. In fact, the Complaint actually acknowledges that the District has several policies which would prohibit any type of constitutional violation such as racial discrimination and proceeds to list several of them. (ECF No. 1, ¶ 86.) Yet, then two paragraphs later, the Complaint makes an unspecific allegation to seemingly try to create a *Monell* claim that "Defendants carried out customs and/or policies and/or practices and usage of nonreporting and tolerance for discrimination expressed through persons with final authority and decision-making capacity through practices so pervasive and widespread as to constitute a custom or a policy with the force of law, and Defendants practices resulted in each violation." (ECF No. 1, ¶ 88.) However, not only is this sole allegation related to *Monell* so unspecific that it does not meet the *Twombly*/*Iqbal* standard as outlined above, but it is contradictory to the previous admission that the District does, indeed, have policies which expressly prohibit constitutional violations for

///

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

1  members within a protected class and the creation of a Safe and Respectful Learning

2  Environment. (*Compare* ECF No. 1 ¶ 86 and ¶ 88.)

3         Moreover, although there are no facts alleged to support the Complaint's one reference to

4  *Monell* liability for the District or Superintendent Enfield, presuming the allegation is tied to a

5  claim that the teacher, who is well below policy-making authority, allegedly used a racial slur

6  when disciplining J. Doe, that one act would not create *Monell* liability on the District. *Palagonia*

7  *v. Sachem Cent. School Dist.*, 2012 WL 1391917 (E.D.N.Y. 2012) (holding that a single incident

8  alleged in a complaint, especially if it involved only actors below the policymaking level,

9  generally will not suffice to raise an inference of the existence of a custom or policy."). Indeed,

10  to the extent Plaintiffs are attempting to salvage their infirm *Monell* liability claim on the premise

11  that, despite the District's clearly established and express anti-bullying and discrimination policy

12  and regulations, the District can still somehow be liable under *Monell* due to them alleging one

13  incident of a teacher allegedly using a racial slur when disciplining a Student, such an allegation

14  fails on its face as it is contrary to clear *Monell* jurisprudence. In order to claim *Monell* under a

15  "custom or practice" theory, such a "custom or practice" must be so "persistent and widespread"

16  that it constitutes a "permanent and well settled city policy." *Trevino v. Gates*, 99 F.3d 911, 918

17  (9th Cir. 1996), citing *Monell*, 436 U.S. at 691; *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th

18  Cir. 1992) (plaintiff must present evidence proving "the existence of a widespread practice that

19  ... is so permanent and well-settled as to constitute a 'custom or usage' with the force of law.").

20  Here, with clear District anti-bullying and discrimination governing documents and trainings

21  provided to staff, and Plaintiffs only alleging one incident by one teacher with over 64,000 District

22  students enrolled, Plaintiffs have wholly failed to establish *Monell* liability through a

23  "widespread" and "permanent" custom or practice. Accordingly, for the several reasons

24  articulated above, municipal liability cannot be extended to the District or Superintendent Enfield.

1

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

### 2.  Superintendent Enfield is Not Liable Under § 1983 Based on Respondeat Superior or Monell Liability.

As noted above, it is unclear precisely what theory of liability Plaintiffs are asserting against Superintendent Enfield since she is rarely mentioned in the Complaint other than being the Superintendent of the District – notably *not* appointed by the Governor or in the Executive Department of the State of Nevada – so clearly, the Complaint cannot even properly plead Superintendent Enfield's role and agency correctly. However, the Complaint includes Superintendent Enfield as a responsible defendant in all of Plaintiffs' causes of action, including their state based intentional tort claims of an incident Superintendent Enfield not only did not engage in, but also was not present for. To the extent Plaintiffs are trying to sue Superintendent Enfield in her official capacity, she is not a proper Defendant as outlined in the preceding section. Superintendent Enfield is an employee of the District and claims against her, in her official capacity, are essentially claims against the District itself; as such, she is not the correct Defendant. An "official capacity" suit is merely an alternative way of pleading an action against the entity of which the government official is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell*, 436 U.S. at 690 n. 55). Similarly, to the extent Plaintiffs attempt to hold Superintendent Enfield responsible for the actions of other agents or employees, the Complaint again fails to state a claim. The United States Supreme Court made it very clear in the *Monell* decision, that a § 1983 claim cannot be predicated on vicarious liability or respondeat superior. Accordingly, any claims against Superintendent Enfield in her official capacity must be dismissed.

///

///

///

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

### 3. Plaintiffs Have Not Set Forth a Supervisory Liability Claim Against Superintendent Enfield in her Individual Capacity.

Given the above, the only conceivable theory of liability against Superintendent Enfield is one against her based on her supervisory liability in her individual capacity. Here, too, Plaintiffs' pleading falls short. Supervisory liability claims under § 1983 are subject to an "extremely rigorous" standard, *Gonzalez v. Reno*, 325 F. 3d 1228, 1234 (11th Cir. 2003). In the recent United States Supreme Court decision in *Iqbal*, the majority wrote that in § 1983 suits, the term supervisory liability is a "misnomer," and clarified that each governmental official, "his or her title notwithstanding," is liable only for his or her own misconduct. *Id.* at 677. Although supervisory liability appears to have survived *Iqbal*, it is now clear that a plaintiff seeking to assert such a claim must prove, through the official's own individual actions, that she violated the Constitution. Rather, a supervisor may only be liable under § 1983 if he was either personally involved in the constitutional deprivation or if there was a "causal connection" between the supervisor's conduct and the deprivation. *MacKinney v. Nielsen*, 69 F.3d 1002, 1008 (9th Cir. 1995). That is, "[a] supervisor may be liable [under § 1983] if there exists ... a sufficient casual connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 645-6 (9th Cir. 1989). Absent personal involvement, a causal connection between a supervisor's conduct and a constitutional deprivation must be established through proof of the supervisor's own culpable action or inaction in the training, supervision or discipline of his subordinates. *Larez v. Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991).

As outlined above, there are no allegations in the Complaint regarding Superintendent Enfield's participation in the one specific incident alleged in the Complaint concerning a teacher, nor are there any allegations that, through her actions, there was a causal connection to the alleged constitutional deprivation (or even that Superintendent Enfield had any direct supervisory control

over the teacher). To bring a § 1983 claim for supervisory liability, a plaintiff must plead specific

facts showing that a defendant individually violated the constitutional rights of plaintiffs.  The

well-settled law makes clear that it is not enough to simply plead that a defendant is a supervisor

and, ergo, must somehow be the moving force behind any harm that allegedly befell plaintiff.

Accordingly, Plaintiffs' pleading as to any claims against Superintendent Enfield are subject to

dismissal.

### C. Plaintiffs' First, Second and Fourth Causes of Action Should be Dismissed for Failure to Exhaust Administrative Remedies Pursuant to the IDEA.

Although the Complaint fails to allege absolutely any factual specifics in both the factual

allegations and its causes of action allegedly tied to disability discrimination (the First and Second

Causes of Action) and its allegations of violations of the IDEA (Fourth Cause of Action), in the

threadbare recitals of each cause of action, all are premised on the District's alleged failure to

develop an appropriate IEP for J. Doe which allegedly therein failed to provide J. Doe with a Free

Appropriate Public Education (FAPE) as required under the IDEA.

In 1975, Congress enacted the Education of the Handicapped Act, which was

subsequently renamed and is known as the IDEA. 20 U.S.C. §1400, et seq. The IDEA and its

implementing regulations, 34 C.F.R. § 300.1, et seq., set forth procedural and substantive

standards for educating students with disabilities. 20 U.S.C. §1400(d). The IDEA provides that a

state must, in order to receive federal financial assistance, have policies and procedures in effect

that assure all students with disabilities the right to a FAPE. 20 U.S.C. §1412(a)(1). This FAPE

requirement means that special education and related services must be provided at public expense,

under public supervision and direction, and without charge to the parent or student. 20 U.S.C.

§§1401(9); (29). Each student's special education instruction is based upon an IEP. 20 U.S.C.

§1414(d). Whenever there is a disagreement regarding a proposal, or refusal, to initiate or change

the identification, evaluation, or educational placement of an individual child, or the provision of a FAPE, a party may file a formal administrative "due process" hearing. 20 U.S.C. §§1415(b)(6)(A) and (f)(1)(A); *see also* NAC 388.306. The formal due process hearing procedures include the right to counsel; the right to present evidence and arguments; the right to confront and cross-examine, as well as to compel the attendance of witnesses; the right to be informed of the issues; the right to receive a copy of all documentary evidence prior to the hearing; the right to written findings of fact; and the right to a verbatim record of the hearing. 20 U.S.C. § 1415(h). The IDEA contains an exhaustion requirement, stating that exhaustion is required "before the filing of a civil action ... *seeking relief* that is also available under [the IDEA]." 20 U.S.C. §415(l) (emphasis added). The Ninth Circuit has explained the rationale for the exhaustion requirement:

> States are given the power to place themselves in compliance with the law, and the incentive to develop a regular system for fairly resolving conflicts under the [IDEA]. Federal courts—generalists with no experience in the educational needs of handicapped students—are given the benefit of expert factfinding by a state agency devoted to this very purpose.

*Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir.1992) (quoting *Crocker v. Tennessee Secondary Sch. Ath. Ass'n*, 873 F.2d 933, 935 (6th Cir.1989) (bracket in *Hoeft*)). In rare circumstances, if exhaustion would be futile or offer inadequate relief, then exhaustion is not required. *Honig v. Doe*, 484 U.S. 305, 326–27, 108 S.Ct. 592, 606 (1988). The party alleging futility or inadequacy of IDEA procedures bears the burden of proof. *Hoeft*, 967 F.2d at 1303. Whether exhaustion is required under the IDEA in a particular case is a question of law that is reviewed *de novo*. *Id.* Courts have consistently stressed that development of an IEP, eligibility criteria, and methodology are classic examples of the kind of technical questions of educational policy best resolved with the benefit of agency expertise and a fully developed administrative record. *Id.* (citing *Hendrick Hudson Cent. School Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 208,

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

1    102 S.Ct. 3034, (1982) (cautioning that courts lack expertise necessary to resolve "persistent and

2    difficult questions of educational policy."); *see also Urban v. Jefferson County School District*

3    *R–1,* 89 F.3d 720, 725 (10th Cir.1996).

4            Here, this Court should dismiss the First, Second and Fourth Causes of Action against the

5    District because Plaintiffs failed to exhaust their administrative remedies. In the seminal decision

6    regarding exhaustion of administrative remedies under the IDEA, the Ninth Circuit in *Payne v.*

7    *Peninsula Sch. Dist.*, 653 F.3d 863, 874 (9th Cir. 2011) (*en banc*), cert. denied, 132 S. Ct. 1540

8    (2012) (overruled in part on other grounds) determined that exhaustion is required when a

9    plaintiff: 1) seeks an IDEA remedy or its functional equivalent; 2) prospective relief to alter an

10   IEP or educational placement, or; 3) **to enforce rights resulting from an alleged denial of**

11   **FAPE, whether pled as an IDEA claim or any other claim that relies on the denial of FAPE**

12   **to provide the basis for the cause of action (for example, in a § 504 claim for damages that**

13   **is premised on a denial of FAPE)**. *Payne*, 653 F.3d at 875, 880 (emphasis supplied).[3] The *Payne*

14   court emphasized that "plaintiffs cannot avoid exhaustion through artful pleading," and that a

15   "'plaintiff cannot avoid the IDEA's exhaustion requirement merely by limiting a prayer for relief

16   to money damages…'" *Id.* (citing favorably to the language in its previous decision *Robb v. Bethel*

17   *Sch. Dist. No. 403*, 308 F.3d 1047, 1052 (9th Cir. 2002) but overruling *Robb* regarding its injury-

18   centered approach).

19   ///

20

21           [3] The *Payne* court expressly held that failure to exhaust administrative remedies is not a jurisdictional issue
     and is instead a defense to be alleged affirmatively by a defendant. *See Payne*, 653 F.3d at 867-871. Thus, it does not
     appear that a Rule 12(b)(1) standard applies to this argument. Further, the recent Supreme Court decision in *Luna*

22   *Perez v. Sturgis Pub. Sch.*, 143 S. Ct. 859, 865 (2023) reiterates that simply alleging money damages does not
     overcome the exhaustion requirement when the remedies available to a plaintiff are available under the IDEA. *Id.*

23   (holding that "a plaintiff who files an ADA action seeking both damages and the sort of equitable relief IDEA
     provides may find his request for equitable relief barred or deferred if he has yet to exhaust § 1415(f) and (g)."). This
     is particularly true when, as here, the cause of action is for violation of the IDEA and some undefined disability

24   discrimination claims apparently associated with failure to develop an appropriate IEP.

The law of exhaustion requires that plaintiffs must exhaust administrative remedies before filing a civil lawsuit if they seek relief for injuries that could be redressed to any degree by the IDEA's administrative procedures. In this case, the IDEA is the thrust of Plaintiff's First, Second and Fourth Causes of Action that the District allegedly failed to properly program and implement an IEP with appropriate supports for J. Doe.  The Complaint actually cites to a denial of FAPE in the First and Second Causes of Action and the Fourth Cause of Action is specific to a violation of the IDEA. (ECF No. 1, ¶¶ 99-120 and ¶¶ 131-145.) Yet, pursuant to the IDEA and United Supreme Court precedent, the development of an IEP and whether the resulting IEP can provide the student with an educational benefit goes directly to whether the student was provided a FAPE. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 205, 102 S. Ct. 3034, 3050, 73 L. Ed. 2d 690 (1982) (holding that the FAPE inquiry involves whether a local education agency followed the IDEA's procedural steps in developing the IEP, and whether the resulting IEP is reasonably designed to provide substantive educational benefit). Thus, the District's development/implementation, or lack thereof, of an IEP is directly within the scope of the IDEA administrative due process review. However, Plaintiffs have never invoked nor attempted to resolve the dispute for the alleged failure to provide J. Doe with an IEP through the administrative arena—nor do they allege to have gone through the administrative review process—despite the fact that creating an IEP and proper implementation of an IEP is a FAPE issue which the IDEA administrative procedures must directly address and remedy. *See* 20 U.S.C. §1414(d); NAC  388.281; NAC 388.306 (a parent of a pupil or a public agency may file a due process complaint on any matter relating to the identification, evaluation or **educational placement of the pupil or the provision of a free appropriate public education to the pupil**) (emphasis added). Accordingly, Plaintiffs failed to exhaust their administrative remedies, and Plaintiffs failed to plead any information or specificity in order to meet their burden as to why a

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

1   rare exception of the exhaustion requirements exists in this matter, and therefore, the First, Second

2   and Fourth Causes of Action must be dismissed.

3       **D.  Plaintiffs' Remaining State-Based Claims Should be Dismissed on the Merits or
            for Lack of Supplemental Jurisdiction.**

4

5           **1.  Plaintiffs' Assault, Battery, and IIED Claims Must be Dismissed for Failure
                  to State a Claim Against the District or Superintendent Enfield.**

6           This Court should dismiss Plaintiffs' assault and battery claims (Fifth and Sixth Causes

7   of Action) and IIED claim (Seventh Cause of Action) against the District and Superintendent

8   Enfield because the Complaint appears to allege that the District and Superintendent Enfield each

9   acted intentionally by directing the teacher to engage in the intentional torts – presumably the

10  teacher's act of self-defense when attacked by J.Doe – but even taken as true, the District and

11  Superintendent Enfield cannot be liable as a matter of law and there are no alleged facts to support

12  such a claim of liability. To establish an assault claim, a plaintiff must show that the actor (1)

13  intended to cause harmful or offensive physical contact, and (2) the victim was put in

14  apprehension of such contact. *Burns v. Mayer*, 175 F. Supp. 2d 1259, 1269 (D. Nev. 2001), citing

15  Restatement (Second) of Torts, § 21 (1965). Battery is the same standard, except that the plaintiff

16  must also show that such contact occurred. *Id*. Under Nevada law, those who aid, abet, or

17  encourage the wrongdoer are also liable to an injured party. *See Johnson v. Fong,* 62 Nev. 249,

18  147 P.2d 884 (Nev. 1944). To state a claim for IIED, a plaintiff must show "(1) extreme and

19  outrageous conduct with either the intention of, or reckless disregard for, causing emotional

20  distress, (2) the plaintiffs having suffered severe or extreme emotional distress and (3) actual or

21  proximate causation." *See Dillard Dept. Stores, Inc. v. Beckwith*, 115 Nev. 372, 989 P.2d 882,

22  886 (1999). Extreme and outrageous conduct is "that which is outside all possible bounds of

23  decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-*

24  *A-Car*, 114 Nev. 1, 953 P.2d 24, 26 (1998) (internal quotations and citations omitted).

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

Here, Plaintiffs plead no facts that even remotely allow the inference of wrongdoing or extreme or outrageous conduct on the part of Defendants District or Superintendent Enfield. For the District, an entity, "A corporation is a fictional person incapable of tortious conduct, and being a *de jure* person, cannot by itself have a mental state of any kind ..." *See* 19 C.J.S. Corporations § 782. As such, there can be no direct liability on the part of the District for the intentional torts. Further, as to Superintendent Enfield, there are absolutely no facts alleged in the Complaint that Superintendent Enfield directed the teacher to engage in the alleged intentional tort in order to support the very tenuous theory that Superintendent Enfield somehow could be liable for aiding and abetting the teacher.  Particularly, the only pled facts do not raise any allegations as to Superintendent Enfield's involvement or even knowledge of the incident.  The pled facts also show that the teacher reacted to J. Doe's assault and battery upon him in self-defense, which was certainly unanticipated and therefore not part of some premediated plan with Superintendent Enfield. *See also Giordano v. Spencer*, 111 Nev. 39, 42, 888 P.2d 915, 917 (1995) (upholding district court award denying plaintiffs claim of civil battery due to evidence of self-defense, stating "Self-defense is justified when the defendant reasonably believes that he or she is about to be attacked. The defendant need not believe that he or she is in danger of great bodily harm and need not wait to be attacked before engaging in self-defense."); NRS 392.4633 (excluding from the definition of corporal punishment any person who engages in self-defense if attacked by a pupil). Accordingly, Plaintiffs' Fifth, Sixth, and Seventh Causes of Action must be dismissed with prejudice.

    **2.**    **Plaintiffs' Negligence Claims Must be Dismissed with Prejudice Because Plaintiffs Fail to Plead Facts to Support Liability Against the District and Superintendent Enfield.**

In the same vein as the other seven causes of action in the Complaint, Plaintiffs' Eighth and Ninth Causes of Action are so scantily pled with mere recitations of the elements of

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

1  negligence that it is difficult to discern what facts could possibly support a claim of negligence

2  against the District or Superintendent Enfield; thus, on this basis alone the Eighth and Ninth

3  Causes of Action must be dismissed. However, to the extent Defendants must guess at the basis

4  of Plaintiffs' negligence claims in order to defend itself, it appears that both negligence claims

5  are premised on negligent hiring, training and supervision of the teacher, which are wholly

6  unsupported by the limited generalized facts in the Complaint warranting dismissal of the Eighth

7  and Ninth Causes of Action.

8       In Nevada, an "employer has a duty to use reasonable care in the training, supervision,

9  and retention of his or her employees to make sure that the employees are fit for their positions."

10 *Hall v. SSF, Inc.*, 112 Nev. 1384, 930 P.2d 94, 99 (1996). An "employer should be liable when it

11 places an employee, who it knows or should have known behaves wrongfully, in a position in

12 which the employee can harm someone else." *Okeke v. Biomat Usa, Inc.*, 927 F. Supp. 2d 1021,

13 1028 (D. Nev. 2013). However, "an employee's wrongful behavior does not in and of itself give

14 rise to a claim for negligent training and supervision." *Id*. This claim requires more than evidence

15 of an employee's negligence, as there must also be evidence that the employer was negligent in

16 ensuring their fitness for the position. *Vinci v. Las Vegas Sands, Inc.*, 115 Nev. 243, 984 P.2d

17 750, 751 (1999). The tort of negligent hiring imposes a general duty on the employer to conduct

18 a reasonable background check to ensure that the potential employee is fit for the position for

19 which they are being considered. *Burnett v. C.B.A. Security Service*, 107 Nev. 787, 789, 820 P.2d

20 750 (1991). An employer breaches this duty when it hires an employee even though the employer

21 knew or should have known of that employee's dangerous propensities. *Hall*, 112 Nev. at 1392.

22 In *Jane Doe A. v. Jeremy Green*, 298 F.Supp.2d 1025, 1040 (D.Nev. 2004), the Court precluded

23 plaintiff from pursuing negligent hiring claims where the plaintiff was unable to demonstrate there

24

20

was something in the employee's background that a more thorough background check might have revealed demonstrating the employee unfit for the position.

Here, Plaintiffs do not allege that, had a proper background investigation been conducted, it would have revealed that the teacher had any sort of dangerous propensities, which arguably might have rendered him inappropriate for the position for which he was hired. Plaintiffs' Complaint sets forth no facts which the District might arguably have failed to discover during its background check. Instead, Plaintiffs broadly allege that the teacher was verbally inappropriate to other students and then, presumably, the District is somehow precluded from retaining that teacher. The mere fact that there is an accident, or an injury, does not raise an inference of negligence. *Cook v. Sunrise Hosp. & Med. Ctr., LLC*, 124 Nev. 997, 194 P.3d 1214, 1216 (2008); *Carver v. El-Sawawi*, 121 Nev. 11, 107 P.3d 1283 (2005). Further, even assuming that the verbal statements towards students are true and that a background check would reveal these statements (which it would not), the negligent hiring standard requires notice of dangerous propensities – i.e. a violent altercation – not claims of inappropriate verbal comments like "ugly duckling" and that students would not amount to anything. *See e.g. Vaughan v. Harrah's Las Vegas, Inc.*, 124 Nev. 1515, 238 P.3d 863, *2 (2008) ("the background check did not reveal any potentially dangerous propensities because she did not have a criminal record, and her prior work history did not include any violent altercations. While the record indicates that Afflerback was written-up at Harrah's for sticking her tongue out at a supervisor and refusing to clean a certain area, this incident did not involve violence."). Accordingly, as pled, these claims also fail to state a claim upon which relief can be granted.

Finally, and most significantly, an alternative basis exists for dismissal of the negligence claims. The State of Nevada has generally waived sovereign immunity for itself and various identified individuals, agencies, and political subdivisions, through the enactment of NRS 41.031.

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

1    However, NRS 41.032 provides an exception called the "discretionary function exception."

2    Therefore, in situations contemplated by NRS 41.032, political subdivisions and its employees

3    (like the District and District administrators) are not just free from liability, they are actually

4    immune from suit and have a right to avoid the cost and delay of discovery and trial. *See Andolino*

5    *v. State*, 97 Nev. 53, 55, 624 P.2d 7, 9 (1981), appeal after remand, 662 P.2d 346 (1983) and NRS

6    41.032 ("no action may be brought"). Government actions are entitled to discretionary-act

7    immunity when they (1) involve an element of individual judgment or choice, and (2) are based

8    on considerations of social, economic, or political policy. *Martinez v. Maruszczak*, 123 Nev. 433,

9    445, 168 P.3d 720 (2007) (adopting this *Berkovitz-Gaubert* two-prong test). Further, the "'hiring,

10   training, and supervision of employees usually involve policy judgment of the type Congress

11   intended the discretionary function exception to shield.'" *Borenstein v. Animal Found*, 526 F.

12   Supp. 3d 820, 846 (D. Nev.2021) (citing *Paulos v. FCH1, LLC*, 136 Nev. 18, 456 P.3d 589, 595

13   (2020) (citing *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000)).

14          Thus, to the extent Plaintiffs' negligence claims are based on Defendants' alleged

15   negligent hiring and supervision because they should not have retained a teacher who made

16   inappropriate verbal comments to students, those claims are barred by discretionary immunity

17   because the hiring, training, and supervision of employees has been deemed a discretionary

18   function to shield public employers from liability in such negligence based claims. Accordingly,

19   the Eighth and Ninth Causes of Action must be dismissed with prejudice.[4]

20   ///

21

22          [4] Plaintiffs have also pled a Tenth Cause of Action for punitive damages. (ECF No. 1, ¶¶ 191-192.) However,
     such a claim must be dismissed because it is a remedy, not its own cause of action.  *See Garcia v. Nevada Prop. 1,*

23   *LLC*, No. 2:14-CV-1707 JCM GWF, 2015 WL 67019, at *4 (D. Nev. Jan. 6, 2015) ("Punitive damages, like plaintiff's
     vicarious liability and respondeat superior claims, are not a legitimate basis for an independent cause of action.
     Punitive damages are one remedy that the court may impose upon a finding of liability. Therefore, plaintiff's sixth

24   cause of action for punitive damages will be dismissed.").

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

**3.  Alternatively, this Court Should Dismiss Plaintiffs' Remaining State Law Claims as it Lacks Supplemental Jurisdiction.**

28 U.S.C. §1367(a) provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." If one of the factors listed in subsections (1)-(4) of 28 U.S.C. §1367(c) are met, however, the court may decline to exercise its supplemental jurisdiction. *Executive Software North America, Inc. v. United States District Court for the Central District of California*, 24 F.3d 1545, 1555-56 (9th Cir. 1994) overruled on other grounds by *California Dept. of Water Resources v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008) (holding the Court of Appeals may review a district court's decision declining to exercise supplemental jurisdiction through a direct appeal rather than only through a writ of mandamus, but leaving untouched the *Executive Software* court's substantive analysis of 28 U.S.C. §1367(c)). Here, if the Court dismisses Plaintiffs' federal causes of action and declines to review/dismiss the state law claims through supplemental jurisdiction, Defendants request that this Court use its discretion to dismiss Plaintiffs' state law claims with prejudice pursuant to 28 U.S.C. §1367(c)(3).

///

///

///

23

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010

## V.    CONCLUSION

Based on the foregoing, Plaintiffs' Complaint should be dismissed with prejudice in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(6) and 28 U.S.C. §1367(c)(3).

DATED this 23rd day of May, 2023.

WASHOE COUNTY SCHOOL DISTRICT
OFFICE OF THE GENERAL COUNSEL


By: /s/Neil A. Rombardo, Esq.
      NEIL A. ROMBARDO, ESQ., Nev. Bar No. 6800
      SARA K. MONTALVO, ESQ., Nev. Bar No. 11899
      P.O. Box 30425
      Reno, NV 89520-3425

      Attorney for Defendants
      WASHOE COUNTY SCHOOL DISTRICT, its Board of Trustees, and Superintendent Dr. Susan Enfield

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5(b), I certify that I am an employee of the WASHOE COUNTY SCHOOL DISTRICT OFFICE OF THE GENERAL COUNSEL and that on this date I served a true and correct copy of the preceding document addressed to the following:

Sigal Chattah, Esq.
Chattah Law Group
5875 S. Rainbow Blvd., #203
Las Vegas, Nevada 89118
chattahlaw@gmail.com
Attorney for Plaintiffs

AND

Joseph S. Gilbert, Esq.
Joey Gilbert Law
405 Marsh Avenue
Reno, Nevada 89509
joey@joeygilbertlaw.com
Attorney for Plaintiffs

by electronically filing the foregoing document with the Clerk of the Court which served Ms. Chattah and Mr. Gilbert electronically.

DATED this 23rd day of May, 2023.

/s/Breanne Read
Breanne Read

Washoe County School District
Office of the General Counsel
PO Box 30425
Reno, Nevada 89520-3425
Telephone: (775) 348-0300; Facsimile: (775) 333-6010